UNION SECURITIES, INC. *v.* MERCHANTS' TRUST AND SAVINGS CO.

[No. 25,969. Filed March 29, 1933. Rehearing denied June 20, 1933.]

*B. D. Emanuel,* for appellant.

*Silverburg, Bracken & Gray* and *Bracken, Gray & De Fur,* for appellee.

ROLL, J.—This action is in the nature of an intervening petition filed by appellant in the case of *Varney Electrical Supply Company* v. *Retherford Manufacturing Company*, in the Delaware Superior Court, wherein appellee, The Merchants Trust and Savings Company, was appointed receiver for the defendant. Appellant in this action seeks to establish a preferred claim against the assets and property in possession of the receiver for amounts collected by the Retherford Manufacturing Company prior to the appointment of a receiver, upon accounts previously assigned by said company to appellant, contending that the amounts so collected by said company constituted a trust fund in the hands of appellee.

The issues were presented by appellant's second amended intervening petition and answer by appellee receiver in general denial.

There was a special finding of facts upon which the court stated four conclusions of law.

Appellant reserved exceptions to the conclusions of law and filed a motion for a new trial, and assigned therein the following reasons: first, the findings of the court are not sustained by sufficient evidence; and second, that the findings of the court are contrary to law. The court overruled the motion for a new trial, and appellant duly excepted.

The errors assigned are, (1) that the court erred in each of its conclusions of law, (2) the court erred in overruling appellant's motion for a new trial.

The facts found by the court show that the Retherford Manufacturing Company, hereinafter called the company, was an Indiana corporation and as such was engaged in the manufacture and sale of lighting fixtures and similar commodities and located in the city of Muncie, Indiana. That the Union Securities, Incorporated, was also an Indiana corporation, authorized by

law to borrow and loan money, to buy and sell promissory notes, accounts, choses in action, and other evidences of indebtedness. That on October 7th appellant and the Retherford Manufacturing Company entered into a verbal agreement, purporting to be an agreement for the purchase by appellant of certain accounts receivable from said company. Thereafter from time to time appellant delivered to appellee for an amount equal to the face value thereof, after deducting ten per cent therefrom and an additional two per cent from the remaining balance, the said ten per cent to be held by appellant as collateral for the payment of said account until payment in full had been received, when said ten per cent would be returned by appellant to said company, but the two per cent so deducted was to be retained by appellant as a discount charge and profit on the transaction. The assignment of said accounts to appellant was to be made on printed forms supplied by appellant and the collection of said accounts was to be made by the seller at its own expense, and the proceeds therefrom remitted to appellant.

That the merchandise represented by the account so assigned to appellant had been sold to the customers of said company on thirty days' credit and in the schedule assigning said accounts to appellant a date thirty days from the date of each schedule was inserted as the date when the company became surety for the payment of the accounts assigned.

That a few days prior to the end of each thirty-day period on each of said schedules, appellant mailed to the company a notice of the amounts remaining unremitted to appellant upon the accounts assigned by each particular schedule, at which time said company was granted the option by appellant of paying the full amount then remaining unremitted on each schedule, or, paying appellant an amount equal to two per cent of

the unremitted balance on each schedule, and that, pursuant to such option, said company at the end of each thirty-day period, did mail to appellant remittances covering two per cent of the amount remaining unremitted to each particular schedule which amounts were received by appellant, accepted and retained by it as additional discount and profit and was not credited upon the account so assigned.

That after said oral contract was entered into, and in pursuance thereof said company at various times during the year 1925 and up until the latter part of June, 1926, transferred and assigned to appellant certain accounts receivable held by it representing merchandise sold to its customers, the face value of said accounts totaling $7,610.77.

That the assignment of said accounts was made upon printed schedules furnished by appellant. Said schedule, when made up, contained the seller's number, the date thereof, name and addresses of the debtor, date of delivery, the amount of the original purchase and the date upon which the company would become surety thereon. Following the schedule of the accounts appeared the following printed matter to be signed by the company:

"For value received, the undersigned hereby sells, assigns and transfers the above listed accounts, notes, contracts, leases and mortgages to UNION SECURITIES, Inc., and to induce UNION SECURITIES, Inc., to purchase the accounts, notes, contracts, leases and mortgages listed above and owned by the undersigned, hereby certifies and guarantees that said undersigned has proper legal authority to make said sale, assignment and transfer; that the balance due on said accounts, notes, contracts, leases and mortgages are correctly set out in the above schedule, that full delivery has been made of the property covered by said accounts, notes, contracts, leases and mortgages in accordance with the specifications of the buyer or lessee;

> that the balances thereon are net and are not dis-
> puted by the debtor and are not past due, and
> that there are no contra accounts, setoffs or coun-
> terclaims whatsoever against any of them; that the
> payment of said balances is not contingent on the
> fulfillment of any contract, past or future. The
> undersigned agrees that entries disclosing this ab-
> solute sale to said UNION SECURITIES, Inc., will
> immediately be made on the books of the under-
> signed, that said UNION SECURITIES, Inc., shall
> have the right, at its election, to audit said books and
> become surety for the payments thereon on the
> ................day of................................, 192....."

That the accounts so assigned were made on thirty days' credit, except two, which were made on sixty days' credit. That duplicate invoices of said accounts so assigned were attached to each schedule and delivered to appellant; upon receipt thereof appellant remitted to the company an amount equal to the aggregate face value thereof, after deducting ten per cent therefrom and an additional two per cent from the remaining balance. A notation of such assignment was made on the books of the company and from time to time, as payments on said accounts were received, such payments were noted on the journal and cash book of the company and also credited on the account of each customer.

That from time to time, prior to July 12, 1926, said company with the knowledge and consent, made collections upon the accounts so assigned to appellant and that a part of the collections so made was, from time to time remitted to appellant, but that prior to said date the company collected the sum of $3,819.62 upon said accounts, which was not remitted to appellant, but was retained and used by it, and in addition thereto allowed credit on said accounts in the sum of $295.92 and accepted a note for $54.67 in settlement of one account which had been assigned.

That the amounts so collected upon the assigned accounts were deposited in the bank as a part of its general bank account and commingled with other funds belonging to said company and would remit to appellant by check drawn upon said general bank account in said bank, which checks were received and accepted by appellant, with full knowledge of said facts.

That an examination of the books of the company would have disclosed the fact that collections were being made by it on the assigned accounts, which were not being remitted to appellant, but no such examination nor any request for such an audit was ever made by appellant.

That appellant made no demand upon appellee, prior to the appointment of the receiver, for payment in full on the assigned accounts, and made no effort to pursue the funds collected until after the appointment of the receiver.

That on July 12, 1926, The Merchants Trust and Savings Company of Muncie, appellee herein, was appointed receiver for the Retherford Manufacturing Company, at which time the assets consisted of finished and unfinished merchandise, machinery and equipment, office fixtures and furniture, cash on hand and accounts receivable appraised for the aggregate sum of $11,195.62, which was afterwards sold, except the amounts receivable, under order of court for $2,680.75.

That claims of general creditors have been filed with the receiver amounting to more than $25,000.00.

That interest at the rate of 6 per cent upon the amounts advanced by appellant to the company from April 21, 1925, amounts to $196.01, and that the discounts paid to and collected by appellant from the company subsequent to and including April 21, 1925, amount to $729.29, and that there is now due and owing appellant the sum of $3,573.93, representing the

amounts collected by the company upon accounts assigned to appellant prior to July 12, 1926, with interest thereon at 6 per cent after deducting the usurious discount and interest charged by appellant.

There were other facts found by the court, but we do not think it necessary to set them out in full or in substance, for they are not essential to a decision of the question presented by this appeal.

The conclusions of law stated by the court are as follows:

"1. The transactions between the defendant Retherford Manufacturing Company and the petitioner constituted loans of money and not bona fide sales of the accounts, and the accounts so assigned by the defendant to the petitioner were assigned as collateral security for the payment of the amounts so loaned by the petitioner to the defendant.

"2. The relation between the petitioner and the defendant was that of debtor and creditor and not fiduciary and no trust was thereby created.

"3. The petitioner is entitled to the allowance of its claim herein as a general claim and not as a preferred claim in the sum of Thirty-five Hundred Seventy-three and 93/100 Dollars ($3,573.93).

"4. The defendant is entitled to an order and judgment against the petitioner for the payment of the costs of this proceeding on the intervening petition of the said Union Securities, Inc."

The decisive question in this case is, whether the transactions between appellant and the Retherford Manufacturing Company, was a bona fide sale of accounts as claimed by appellant, or was the transaction in fact a loan and the accounts assigned as security?

A sale is the transfer of property in a thing for a price in money. The transfer of the property in a thing sold from a seller to a buyer for a price is the essence of the transaction. And the transfer is a transfer of the general or absolute property as distinguished from a special property.

A loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows.

We find the following statement in 39 Cyc. 926: "In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for is use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form."

The contract these parties entered into was on its face an agreement on the part of the Retherford Manufacturing Company, "to sell," and on the part of the Union Securities, Inc., "to buy" accounts. In the transfer of the accounts under the contract it was stated, "For value received, the undersigned hereby sells, assigns and transfers the above listed accounts . . . to Union Securities, Inc.," and it is further provided that, "The undersigned agrees that entries disclosing this absolute sale to said Union Securities, Inc., will immediately be made on the books of the undersigned. . . ." As the contract provides in terms for a "sale," before we would be justified in holding the transaction involved a loan and not a sale, the facts should clearly appear that it was in reality a loan and not a sale. If in the written contract the parties call a transaction in which they have engaged a "sale," we are to assume ordinarily that they have used the term correctly and in its technical sense. But if, from all the facts of the transaction, it clearly appears that what the parties called a sale was in reality not a sale, but a loan, the court must decide according to the real nature of the transaction, without regard to the terms the parties applied to it.

A case, in many particulars, similar to the case now under consideration, came before the District Court of the United States for the Eastern District of Kentucky in 1913. *In Re American Fibre Reed Co.* (1913), 206 Fed. 309. The trustee in that case had collected certain of the accounts, which the intervening petitioner alleged had been purchased from the corporation prior to the bankruptcy, and was retaining them in his possession, claiming them as a part of the estate of the bankrupt, on the ground that the transcription between the parties did not amount to a sale of the accounts, but was in substance and effect nothing more or less than a pledging of the accounts by the corporation to the petitioner for a loan. In that case, as in this, the corporation "sold," the accounts to the petitioner, and the accounts were collected by the vendor at their expense, the proceeds to be applied first to the payment of the amount advanced by the vendee to the vendors, and the remainder of the amounts collected went to the vendors for their own benefit. The amount paid by the vendee was about 75 per cent of the face value of the account, and accounts so "sold," were stamped on the books of the vendors as "sold," to the petitioner. The accounts, having been collected by the vendors, were turned over to their paid employee, a person naturally acceptable to both parties, and he at once transmitted the same to the vendee. If accounts were not paid when they matured and the debtors were insolvent, the vendors were bound to repurchase the accounts within five days of written notice of default. In all this there is a close resemblance to the transaction involved in the present case. The court refused to recognize the right of the vendee, the intervening petitioner. The court in that case said: "Insofar as the contracts in question here use words fit for a contract of purchase, they are mere shams and devices to cover loans of money at usurious rates of interest."

The facts in the case of *Chase & Baker Co.* v. *National Trust & Credit Co.* (1914), 215 Fed. 633, in many respects resembles the one now under consideration, and in passing on the question as to whether the agreement to buy accounts was in fact an agreement of sale or a loan, the court said: "A court of equity will not be frustrated in ascertaining the real intention of the parties to make a usurious loan by the fact that parol proof thereof would contradict the written evidence of the apparent transaction."

Another case very similar to the case at bar is *In Re Grand Union Co.* (1915), 219 Fed. 353. We quote the following excerpt from the opinion of that case: "Stripped to the verbiage with which the parties have sought to clothe their transaction, the naked facts disclose that what they were doing was not a sale, but a loan, and that leases were turned over simply by way of security. The Grand Union Company needed money and the Hamilton Company advanced it."

The money advanced by the Union Securities, Inc., was to be repaid by the Retherford Company in the following manner. It collected at its own expense the accounts as they became due, put the money into its general funds and out of such funds remitted the aggregate amount of its collections to the Union Securities, Inc., and on all sums due on the accounts they were paying interest, at the rate of two per cent a month. The customers of the Retherford Company whose accounts were assigned to appellant were never notified of that fact. The facts show that appellant never looked to the person owing the account, as long as the Retherford Company was solvent. At the end of thirty days after the accounts were assigned the Retherford Company became surety for the payment of the accounts so assigned. If accounts were collected in full, the Retherford Company might retain such collec-

tions, provided it would remit two per cent of the amount at the end of each thirty-day period. If the transaction was in reality a sale, it would seem as though the vendor's duty was at an end when the title passed, and that thereafter there would have been no obligation to guarantee payment or to make collections, neither would the seller have the right to keep the proceeds of the accounts when collected by remitting two per cent thereof each thirty days. It is claimed by appellant that the assigned acounts, remaining unpaid at the end of the thirty-day period, were purchased back by the Retherford Company and resold to the Union Securities, Inc. No such transaction was in fact had. The appellant, at the end of each thirty-day period would send the Retherford Company a statement of the amount due under each schedule, and the Retherford Company could either pay the amount in full or remit an amount equal to two per cent, which would carry them for another thirty days. At the end of that period the same transaction took place. If the Retherford Company paid the full amount of any schedule, the Union Securities, Inc., would then return to it the ten per cent it had withheld at the time of the original assignment.

The test which determines whether the real transaction between the parties was a loan or a sale is the intention of the parties, and their intention is to be ascertained from the whole transaction, including the conduct of the parties as well as their written agreement. The facts as disclosed by the finding show that the real intention of the parties was to effect a loan of money at a rate of interest not otherwise collectable.

Transactions similar in character to the one here under consideration have come before other courts and they have uniformly been held to be a loan and not a sale. See *Mercantile Trust Co. of Illinois* v. *Kastor*

(1916), 273 Ill. 332, 112 N. E. 988; *Dorothy* v. *Commonwealth Commercial Co.* (1917), 278 Ill. 629, 116 N. E. 143, L. R. A.1917E, 1110; *Home Bond Co.* v. *McChesney, Trustee* (1916), 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444; *LeSueur et al.* v. *Manufacturers' Finance Co.* (1922), 285 Fed. 490; *National Trust & Credit Co.* v. *F. H. Orcutt & Son Co.* (1919), 259 Fed. 830.

We have reviewed the evidence and find that the evidence fully sustains each of the special findings of the trial court.

We find no error in the record. Judgment affirmed.

### ON PETITION FOR REHEARING.

ROLL, J.—Appellant in its petition for rehearing insists that the court failed to decide the real question in the case and which is stated by appellant in his petition as follows:

"Is appellant entitled to a preference claim for the amount of its collateral funds which the trial court says, and the undisputed evidence of record proves, were collected by appellee's insolvent and invested in its property now in the possession of appellee, and which question this court has always heretofore answered in the affirmative?"

If it be assumed that there existed a fiduciary relation between appellant and appellee's insolvent we understand the equitable rule applicable, to be that, if trust property, either in its original or substituted form, can be traced into the assets in the hands of the insolvent, or his assignee, the fiduciary may have a lien established or a preference decreed over the claims of the general creditors, although the identity of the trust fund is lost. But in such cases it must be made to appear that the trust property is actually represented in the assets. *Windstanley et al.* v. *Second National Bank* (1895), 13 Ind. App. 544, 41 N. E. 956, and cases there cited. It was said in the case last cited that: "If

the agent should take the money (meaning the money of its principal) and apply it to the payment of his debts, or use it for other purposes, so that it is consumed, it would then form no part of his estate. The beneficiary under such circumstances is not equitably entitled to a preference. While it is true that in using the money to pay his debts it may have inured to the benefit of the estate, still this may be said of all contract debts. 'In a very general sense, all creditors of an insolvent may be supposed to have contributed to the assets which constitute the residuum of his estate.' *Cavin* v. *Gleason* (1887), 105 N. Y. 256, 11 N. E. 504. We know of no reason founded in justice why the beneficiary should have a superior right over the general creditors under such circumstances."

If the money collected by appellee's insolvent went into the property now represented by the assets in the hands of the assigne, appellant would be entitled to a preference over general creditors. There is nothing in the findings, nor is there any evidence from which the court could have found that the money belonging to appellant went into any of the assets coming into the hands of the receiver. The evidence shows that appellee's insolvent collected certain money upon accounts that had been placed with appellant as collateral security. That when so collected it was deposited in the general bank account of said insolvent and was used in the payment of the expenses of running the business, salaries, commission and things of that kind. That merchandise was purchased with some of it, manufactured into articles and sold, and other merchandise was purchased to take the place of that which was previously purchased and used, and new accounts were created, but nowhere was it shown that the money collected by appellee's insolvent purchased any of the merchandise that passed into the hands of the receiver. It

is a well established rule that a party seeking to invoke judgment of the law must produce the facts which will support the judgment; and no inference or intendment will be indulged in favor of a special finding or verdict.

The court's finding No. 16 specifically found that "said receiver does not now have in its possession any funds or other property represented by funds collected on accounts assigned to the petitioner."

If, as we said in the beginning, the fiduciary relation as contended for by appellant, be conceded, yet it is not entitled to a preference under the rules above stated.

Rehearing denied.