THOMPSON, JR. *v.* ARNOLD, KNOX COUNTY
ASSESSOR ET AL.

[No. 29,532.  Filed February 19, 1958.  Rehearing
denied April 7, 1958.]

*McCormick & McCormick, Shake & Shake,* all of Vincennes, *Hastings, Allen & Hastings, Arthur W. Allen* and *J. Lloyd Fitzpatrick,* all of Washington, for appellant.

*Edwin K. Steers,* Attorney General, and *Frank E. Spencer,* Assistant Attorney General, for appellees State Board of Tax Commissioners and Auditor of the State of Indiana.

*Lewis & Funk* and *James J. Lewis,* of Vincennes, for appellees Assessor, Treasurer, Auditor and Board of Review of the County of Knox.

ACHOR, J.—This is an appeal from a final judgment of the Knox Circuit Court adverse to the appellant, in an action instituted by him to review orders of the County Assessor and the County Board of Review which assessed him for purposes of taxation with certain alleged omitted property.

The court below sustained the demurrer to appellant's complaint. The appellant refused to plead over, and the judgment was that appellant take nothing by his amended complaint and that appellees recover their costs.

The property assessed consisted of 10,428 bushels of corn placed in storage by appellant under the U. S. Department of Agriculture Agricultural Stabilization and Conservation program. This property was assessed by appellee Arnold as "Omitted Property" of the appellant. The assessment was affirmed by the appellees County Board of Review and the State Board of Tax Commissioners. It is from this assessment that appellant prosecutes this appeal.

The basic question in this case is, was appellant the

owner of the property and therefore subject to the tax? If, by the transaction, appellant *mortgaged* the corn to secure a loan of $16,789.08, then he was the owner of the property and subject to the tax. If, on the other hand, the transaction amounted to a *sale,* appellant was no longer the owner, and the corn was not taxable to appellant.

The nature of the transaction must be determined from within the federal laws and regulations pertaining to the transaction. On November 4, 1955 there was in force and effect the "1955 Crop Corn Price Support Program" of the Commodity Credit Corporation, Commodity Stabilization Service, United States Department of Agriculture. By said price support program, producers of corn who had complied with the regulations pertaining to corn acreage allotments were eligible to apply to their county committee until May 31, 1956 for price support on their 1955 crop.[1] At the time appellant made and consummated his application to the local committee, the local market price for corn in Knox County was $1.00 per bushel but the support price for Knox County was $1.61 per bushel.[2]

The transaction consisted of a "Producer's Note, the Supplemental Loan Agreement and the Commodity Chattel Mortgage, all of which were contemporaneously executed by appellant. All expressly describe the transaction as a loan and mortgage. Nevertheless appellant asserts that in fact and legal

1. *See,* 1955 Commodity Credit Corporation Grain Price Support, Bulletin 1, Federal Register of May 5, 1955; Commodity Credit Corporation Grain Price Support, Bulletin 1, Supplement 1, Corn, Federal Register, June 11, 1955; and 1955 Commodity Credit Corporation Grain Price Support, Bulletin 1, Supplement 2, Corn, Federal Register of October 25, 1955.

2. *See,* 1955 Commodity Credit Corp. Grain Price Support, Bulletin 1, Supp. 1, Corn, Federal Register of June 11, 1955, §421.1137 (c) (d) (e).

effect these documents gave the transaction the character of a sale rather than a loan and mortgage. The law is well settled that the character of a document must be determined by its legal effect and not by the name ascribed to it. *Wayne Pump Company* v. *Gross Income Tax Div.* (1953), 232 Ind. 147, 110 N. E. 2d 284. The question here is, what is the legal effect of the documents involved?

Appellant asserts that the significant characteristics of this transaction considered in the light of established legal principles, leads to the single conclusion that the transaction did not possess the characteristics of a loan and mortgage, but constituted a sale. Appellant quotes from the case of *Schneider* v. *Daniel* (1921), 191 Ind. 59, 62, 131 N. E. 816, 817, 17 A. L. R. 1410, as stating the characteristics of a mortgage. In that case this court said:

> "The usual earmarks of a mortgage are: (1) That there is a previous debt; or a present advance of money upon loan, for which some evidence is taken, obliging the borrower personally, to the absolute payment. . . ."

First, appellant asserts that under the above and other recognized authority the absence of an absolute obligation on the appellant for the repayment of a debt prevents this transaction from constituting a loan and mortgage.[3] Upon this issue appellant cites the fact that 7 U. S. C. A., §1425 provides: "No producer shall be personally liable for any deficiency arising from the sale of the collateral securing any loan made under authority of this Act . . ."

Second, appellant cites the fact that in the Supplemental Loan Agreement, paragraph 6 (e) (i), it is

---

3. *See,* 54 C. J. S., p. 657, **Loan.**

provided that the note should be satisfied by payment or delivery of the commodity. Therefore, appellant contends that the fact that he had this option, to pay or not to pay, evidences that the transaction was a sale on condition and not a mortgage. In support of this contention, appellant cites the cases of *Voss et al.* v. *Eller* (1896), 109 Ind. 260, 264, 10 N. E. 74; *Davis* v. *Landis* (1944), 114 Ind. App. 665, 667, 53 N. E. 2d 544, 59 C. J. S., §10, p. 38.

Third, appellant cites the fact that one of the tests regularly applied to determine the nature of a transaction is, at whose risk is the property being held? Appellant then cites the fact that under the provision of paragraph 6 (e) (iii), the loss or damage to the corn, without the fault, negligence or conversion of the appellant, was the loss of Commodity Credit Corporation. In support of this position in this case appellant cites the case of *Schneider* v. *Daniel, supra,* 191 Ind. at 62-63, 131 N. E. 818, in which the court said: " . . . It is always a question — whether mortgage or no mortgage—Whose loss will it be if the thing is destroyed? If that of the maker of the deed, then it is a mortgage; but if it be the loss of the payee, it is a conditional sale." Appellant also cites the case of *Automobile Underwriters* v. *Tite* (1949), 119 Ind. App. 251, 255, 85 N. E. 2d 365, 367, in which the court said: "It is generally said that he is the owner of property who, in case of its destruction, must sustain the loss. . . ."

Fourth, appellant asserts that §77 of the Internal Revenue Code, U. S. C. A., §77, lends additional support to his position. He cites the fact that the same Congress which authorized the transaction into which appellant entered on November 4, 1955 also authorized

appellant, at his election, to consider, report and pay taxes upon the amount received from the Commodity Credit Corporation as income during the taxable year in which the same were received. Income taxes are not ordinarily paid on borrowed money. Therefore, appellant asserts that by permitting the appellant to pay taxes during the year the money was received, Congress evidenced its intent that the transaction between a producer and the Commodity Credit Corporation be considered a sale and not a loan—at the option of the producer.

Fifth, appellant cites the fact that a recognized test in determining whether the transaction is a sale or a loan is the relationship between the market value of the commodity and the consideration passing between the parties. Appellant then cites the fact that appellant received $16,789.08 for $10,428.00 worth of corn. He then reasons that lenders of money do not, in the ordinary course of business, lend an amount of money far in excess of the market value of the property offered as security for the debt.

As further argument in support of his position appellant has also asked that we consider the rule that in case of doubt, tax levying statutes are to be construed more strongly against the state and in favor of the citizen, and Sections 64-209, 64-507, Burns' 1951 Replacement relating to the taxation of real estate, and 64-512, relating to taxation of property pledged to pawnbrokers. This we have done. However, we do not consider the matters asserted in this paragraph either persuasive or controlling of the issue here present.

Finally, and *last* appellant cites the fact that under the program the corn was placed under seal by the

government. This is described as a possessory act. Appellant then asserts that even though the transaction be considered a chattel mortgage, in Indiana a chattel mortgage is, at law, a conditional sales contract which vests conditional title and therefore the duty to pay taxes thereon in the mortgagee in possession. As supporting this position appellant cites the cases of *Sapirie* v. *Collins* (1919), 70 Ind. App. 529, 532, 122 N. E. 679; *Lee* v. *Fox* (1888), 113 Ind. 98, 101, 14 N. E. 889.

If this contention be true, then consideration of the other issues presented is unnecesary. Therefore, we first give our consideration to this issue. Appellant seeks to set up the definition of a chattel mortgage under the old Indiana cases cited above. However, under the Chattel Mortgage Act of 1935, we find an entirely different definition, as follows:

> "The term 'mortgage' where used in this act shall include any instrument given to secure any present and/or future indebtedness, including mortgages on leaseholds for a term of years, at will, or by sufferance. The term 'borrower' where used in this act shall include the original borrower, his administrators, executors, representatives, . . . The term 'lender' where used in this act shall include the original lender, its successors, transferees, endorsees and/or assigns and/or the owner and/or holder of the secured indebtedness, . . ." §51-521, Burns' 1951 Repl. (Acts 1935, ch. 147, §22, p. 498.)

Section 51-501 of the above Act also specifically provides for chattel mortgages with the United States, or any department, agency or officer thereof, thereby specifically covering the mortgage and transaction in question with the Commodity Credit Corporation.

Section 51-505 of the above Act specifically states that no chattel mortgage of grain, etc., shall be invalid in any particular because provision is contained therein,

that the mortgagor may use and/or consume food, feed, forage and/or fodder crops in preserving, maintaining, fattening, or preparing for market the livestock or any other property covered thereby. This section indicates that even though the mortgage and/or other instruments might have contained rather unusual or beneficial provisions in favor of the producer, such provisions would not change the character of the transaction and would not invalidate the mortgage.

We conclude therefore that a chattel mortgage under the above referred to Chattel Mortgage Act of 1935 creates only a lien on the property mortaged. (§§51-502 and 51-518.)

We therefore proceed to consider the nature of the transaction as determined from the description given it by the parties and by its legal effect. At the outset we must consider the fact that each of the instruments signed by appellant clearly and repeatedly describe the transaction as a loan secured by a mortgage.[4] The first rule of construction is that written instruments are assumed to constitute the types of transactions described by the parties unless a contrary construction is required because of the legal effect of the transaction as consummated by the parties under the instruments themselves. In the case of

4. (a) The Mortgage Note provides in part "2. . . . This note evidences a *loan* made pursuant to a *loan* program formulated by Commodity Credit Corporation, and is secured by a *chattel mortgage* covering the above-described commodity, duly executed by the producer and filed for record."

(b) The Supplemental Loan Agreement provides in part: "(a) The *loan* evidenced by the note is made subject to and in consideration of not only the representations, warranties, and agreements contained in the *chattel mortgage* covering the above-described commodity . . ."

(c) The Commodity Chattel Mortgage provides in part: "This chattel *mortgage* secures a *loan* made available under a loan program formulated by Commodity Credit Corporation, as an agency of the United States. . . ."

*Union Securities, Inc.* v. *Merchants Tr. & Sav. Co.* (1933), 205 Ind. 127, 135, 185 N. E. 150, 186 N. E. 261, 95 A. L. R. 1189, this court stated the rule with regard to the construction of such instruments as follows:

> " . . . As the contract provides in terms for a 'sale,' before we would be justified in holding the transaction involved a loan and not a sale, the facts should clearly appear that it was in reality a loan and not a sale. *If in the written contract the parties call a transaction in which they have engaged a 'sale,' we are to assume ordinarily that they have used the term correctly and in its technical sense.* But if, from all the facts of the transaction, it clearly appears that what the parties called a sale was in reality not a sale, but a loan, the court must decide according to the real nature of the transaction, without regard to the terms the parties applied to it." (Our italics.)

In 17 C. J. S., Contracts, §302, p. 720, the following rule is stated:

> "Technical words will be taken in a technical sense, as, for example, legal terms, unless they are clearly used in a different sense. . . ."

See also, *Beard* v. *Lofton* (1885), 102 Ind. 408, 2 N. E. 129; *Warrum* v. *White* (1909), 171 Ind. 574, 86 N. E. 959; *Higgins* v. *St. Joseph Loan & Trust Co.* (1933), 98 Ind. App. 674, 186 N. E. 910; *Buddenberg* v. *Welch* (1933), 97 Ind. App. 87, 185 N. E. 865.

The question then is, can it be said of this transaction that from *all* the facts of the transaction it clearly appears that what the parties called a "loan" was, in reality, a "sale"? In construing the transaction according to its legal effect, we take into consideration the fact that it contains many provisions favorable to the producer which are characteristic of a sale.

However, it is also a fact that the transaction contains many provisions which are not characteristic of a sale but are only the characteristics of a loan. For example, although as stated in appellant's *first* contention, the act provides that "No producer shall be personally liable for any deficiency arising from the sale of collateral securing any loan . . ." The next sentence in the act also provides, "This provision shall not, however, be construed to prevent the Commodity Credit Corporation or the Secretary from requiring producers to assume liability for deficiencies in the grade, quality, or quantity of commodities stored on the farm or delivered by them, for failure properly to care for and preserve commodities, or for failure or refusal to deliver commodities in accordance with the requirements of the program." 7 U. S. C. A., §1425.

And it is further provided that, in event the grain is sold by the government to satisfy the indebtedness and the amount recovered is greater than the amount loaned, the surplus shall be paid to the producer.[5] These are characteristics of a loan secured by a mortgage and not a sale.

As to appellant's *second* contention that the transaction was a sale with an option to repurchase, because it provided that the note could be satisfied by payment or delivery of the commodity, it could be said with equal or greater verity that until the producer delivered the grain the transaction was more in the nature of a loan with an option to sell. Upon this issue the court, in the case of *United States* v. *Springfield Fire & Marine Ins. Co.* (1952), 107 F. Supp. 753, 755, aff'd 207 F. 2d 935, said:

---

5. Commodity Credit Corporation Commodity Chattel Mortgage, Exhibit C.

" . . . It is undisputed that the necessary survey had not been made and the producer notified where to deliver the corn within the time allowed for such purpose. It is my conclusion that *until the corn was delivered, it remained the property of the producer,* subject to all the conditions of the mortgage." (Our italics.)

See also, *Farmers Grain, etc. Ass'n* v. *Commodity Credit Corp.* (1956), 145 F. Supp. 788.

Appellant's *third* contention was that the assumption of the risk of loan or damage by the Commodity Credit Corporation was evidence of ownership in the latter. However, this characteristic is not controlling. A mortgagee might contract to insure the chattel pledged against loss without changing the character of the transaction. Furthermore, in this instance, although the corn was under seal, the appellant was liable and assumed the risk of loss of the grain due to insects, infestation, rodents and vermin due to the fault or negligence of the producer. In other words, actually the Commodity Credit Corporation assumed the risk of loss in some instances, and the producer (appellant) assumed the risk of loss in other instances.

Appellant's *fourth* contention is that the fact that the Internal Revenue Code permits the producer to pay taxes on the money the year it is received is further evidence that the transaction was a sale and not a loan. This issue was considered in the case of *Stewart* v. *United States* (D. C. 1951), 100 F. Supp. 221, 225, 226, as follows:

"Ordinarily the receipt by a borrower of the proceeds of a loan does not constitute reportable or taxable income; and the result is not different though the loan be granted on the security of a chattel mortgage. . . .

> Basically and without statutory indulgence, the situation would not be otherwise with the proceeds of loans upon commodities made by the Commodity Credit Corporation. . . .
>
> . . .
> . . . Usually, and in the absence of election by a taxpayer, amounts received as loans from the Commodity Credit Corporation are not income. They represent loans, and a loan does not ordinarily result in the borrower's receipt of income. By the remedial provisions of section 123 (a), supra, such amounts may be considered and reported and treated as income for the year of their receipt, but only if the taxpayer so elects. . . ."

The privilege granted the producer of paying taxes on the money received from such loan is a matter of statutory indulgence, which does not change the express character of the transaction.

Finally we give consideration to appellant's *fifth* contention, that the transaction constituted a sale for the reason that the amount of the money loaned far exceeded the value of the property given in security. However, the fact does not prevent the transaction from constituting a loan. An indulgent or paternalistic lender might loan money with limited security. He might even agree, as in this instance, to forgive the indebtedness beyond value of the property pledged, if sold for less than the amount loaned, and to pay the borrower the excess in event the property pledged should sell for more than the amount loaned. Such facts would not make the transaction a sale. A sale could not be considered consummated until such time as the property pledged was delivered to and accepted by the "lender," and settlement had on the basis of the agreement.

The transaction here in question was clearly described in legal terms as a loan secured by a chattel

mortgage. Applying the test of *Union Securities, Inc.* v. *Merchants Tr. & Sav. Co., supra,* 205 Ind. 127, 135 185 N. E. 150, 186 N. E. 261, 95 A. L. R. 1189, it cannot be said that from all the facts in the transaction, it clearly appears that what the parties in this case described as a loan and mortgage was, in fact, a sale. In many of its aspects the legal characteristics of the transaction was that of a loan and not a sale.

We conclude, therefore, that the transaction here in controversy was a loan secured by a chattel mortgage, as the parties described it to be, and that the corn in question was taxable as the property of the appellant.

Judgment affirmed.

Emmert, C. J., Bobbitt & Landis, JJ., concur.

Arterburn, J., not participating.

NOTE.—Reported in 147 N. E. 2d 903.