(No. 38910.—

Lloyd E. Reeser *et al.* d/b/a Reeser Bros., Appellees, *vs.* Otto B. Koons, County Collector, *et al.,* Appellants.

*Opinion filed January 25, 1966.*

Hershey, J., dissenting.

Ray Moss, Special State's Attorney, of Clinton, for appellants.

Lamkin and Lamkin, of Clinton, (Raymond W. Lamkin, Jr., of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Personal property taxes for the year 1962 were levied against certain corn stored upon the farm of the plaintiffs, Lloyd E. Reeser and Harold G. Reeser, doing business as Reeser Bros. They brought this action to enjoin the collection of those taxes on the ground that the corn was owned by the Commodity Credit Corporation, an agency of the United States, and so was exempt from taxation. After hearing evidence the circuit court issued the injunction, and the defendant, Otto B. Koons, who is the county collector, and the other defendants, who are also county officers, have appealed directly to this court. The revenue is involved.

The corn in question was grown on the plaintiffs' farm in 1959 and 1960. After each harvest the plaintiffs applied for and received a "loan" from the Commodity Credit Corporation, (hereafter the Corporation), and the crop

was "sealed" under a price support program conducted in accordance with the applicable federal statute. (7 U.S.C.A., § 1281, *et seq.*) Personal property taxes were paid on each crop during the time it was sealed. In October of 1961, both harvests were "resealed" and the maturity date of the loans was extended until July 31, 1963.

The principal question in this case is whether the corn, after it has been resealed, is the property of the plaintiffs and so subject to taxation under section 18 of the Revenue Act of 1939, (Ill. Rev. Stat, 1961, chap. 120, par. 499,) or "the property of" the United States, and therefore exempt under section 19.4 of that act. (Ill. Rev. Stat. 1961, chap. 120, par. 500.4.) The plaintiffs contend that when the corn is resealed it is in effect sold to the federal government and that what the plaintiffs retain is an option to repurchase. The defendants contend that the resealing transaction is what it purports upon its face to be, an extension of a note and mortgage, and hence that the corn is not the property of the federal government.

The record shows that under the price support program, a producer of corn who has complied with federal acreage allotments, production goals and marketing practices is eligible to apply for a "farm storage loan" on his crop. (7 U.S.C.A. § 1421(c).) The application for a loan must be made before May 31 of the year following the harvest. If the application is accepted, the producer receives an amount per bushel which is in excess of the prevailing market price, upon signing a "Commodity Chattel Mortgage" and executing a "Producer's Note and Supplemental Loan Agreement." The corn is security for the loan. It is placed in storage in sealed cribs on the producer's premises.

The "Producer's Note and Supplemental Loan Agreement" states the maturity date of the loan, and continues: "On or before the maturity date shown above, or upon such earlier date as the Corporation may make written demand for payment, for value received, the undersigned pro-

ducer(s) * * * promise(s) to pay to the order of the Corporation, payee, at the office of the ASC County Committee shown below, * * *" the amount of the loan with interest at 3½ per cent per annum. This document also contains the following provision: "Upon maturity of the note (*i.e., the date specified therein or such earlier date as the Corporation may make written demand for payment*), the note shall be satisfied by payment or by delivery of the commodity subject to the provisions of this section. If a producer desires to deliver the commodity to the Corporation, he should prior to maturity give the county committee which approved the loan written notice of his intention to deliver. The producer shall bear any expenses incurred in connection with the delivery of the commodity. * * *" (Emphasis in original.) The provisions of the agreement as to the risk of loss or damage need not be set forth here in detail. Essentially, they reduce to the proposition that the producer is responsible for his own conversion or negligent storage and for deficiencies in grade, and the Corporation is responsible for theft and accidental loss or damage.

If the corn remains under seal until the following July 31, it may, upon the application of the producer, be resealed for a further period. In this case resealing was accomplished by the application of the plaintiffs for an extension of their farm storage loan and mortgage, and the approval of that application. With their application the plaintiffs, who described themselves as mortgagors, submitted an affidavit which identified the original note and mortgage and stated that the note remained unpaid. The affidavit further stated that the affiants "make this affidavit for the express purpose of extending the time of the said debt and the lien of said chattel mortgage on the property therein mentioned * * *." The resealing agreement extended the terms of the original note, chattel mortgage and supplemental loan agreement, as well as the maturity date of the loan.

While the issue in this case is limited to resealed corn, the arguments of the plaintiffs are so broadly framed that, and as they say, "the question even arises whether grain sealed with the Federal Government is taxable as personal property under the Revenue Act of the State of Illinois." They maintain that "title to said grain is or has been transferred to the Federal Government for a certain definite price per bushel and the only rights which the farmer retains in the grain, is the right to repurchase said grain at a set price." It is their position that a sale must have occurred because no deficiency judgment could be obtained, since the debt may be satisfied by delivery of the corn in proper condition. By the terms of the agreement, the Corporation may demand payment at any time, but the producer may satisfy his obligation at any time "by payment or by delivery of the commodity." That the producer is not personally liable for the debt is confirmed by federal statute: "No producer shall be personally liable for any deficiency arising from the sale of the collateral securing any loan made under authority of this Act unless such loan was obtained through fraudulent representations by the producer." 7 U.S.C.A. § 1425.

But the existence of a personal liability on the part of the mortgagor is not a *sine qua non* of a chattel mortgage. As the court said in *City of Joliet* v. *Alexander,* 194 Ill. 457, 462: "It is not essential to a debt or to a mortgage that there should be any promise of the mortgagor to pay the debt. The mortgage may be merely to secure payment, and a debt exists in many cases where there is no personal liability and where there could be no suit at law and no personal decree could be rendered for a deficiency." (See also *Evans* v. *Holman,* 244 Ill. 596, 600; *Bedian* v. *Cohn,* 10 Ill. App. 2d 116.) As to the transfer of title, the original agreement provides, "If, upon maturity and nonpayment of the producer's note the Corporation is the holder of the

note, then at the Corporation's election title to the unredeemed collateral securing the note shall, without a sale thereof, immediately vest in the Corporation." And the affidavit executed by the plaintiffs in connection with the re-sealing agreement refers to an extension of the lien of the chattel mortgage.

The plaintiffs also contend that they do not own the corn because they have no power to sell or otherwise dispose of it, and that "* * * the right to use the grain—the right to sell the grain—or otherwise dispose of or transfer the interest in the grain—lies in the U.S. Government * * *." But this contention is based upon an inaccurate reading of the agreement between the parties. Each party, under specified circumstances, has the power to take the grain at any time; the Corporation may, at its option, accelerate the maturity of the debt and in default of payment take the grain; the plaintiffs may, at their option, pay the debt and take the grain. In terms of ability to deal with the corn, the parties stand in similar circumstances and we can not say that the plaintiffs lack substantial power over it. The corn is in their possession, and while the Corporation has assumed the risk of loss in some instances, the plaintiffs are responsible for loss occasioned by their negligence or from "insect infestation, rodents or vermin." Settlement of the loan is to be made on the shelled corn basis, and the cost of shelling is the obligation of the plaintiffs.

The plaintiffs point out that they elected, as they were permitted to do under the federal statute (26 U.S.C.A. § 77,) to pay federal income tax on the "loan" they received during the year that they received it, and that when the loan was made the corn was worth much less than the amount loaned to them. But the vagaries of federal income tax law and the benevolent motivations that underlie the price support program do not alter the legal significance of this transaction. On these points it has been aptly said that: "The privilege granted the producer of paying taxes on the money

received from such loan is a matter of statutory indulgence, which does not change the express character of the transaction. * * * An indulgent or paternalistic lender might loan money with limited security. He might even agree, as in this instance, to forgive the indebtedness beyond value of the property pledged, if sold for less than the amount loaned, and to pay the borrower the excess in the event the property pledged should sell for more than the amount loaned." *Thompson* v. *Arnold,* 238 Ind, 177, 147, N.E.2d 903, 909 (1958).

The rights and obligations of the parties before and after resealing are the same, except that the corn must be shelled by the producer and placed in tight storage during the second year of the reseal period, and the producer receives "a 14 cent storage allowance for the first year of reseal." As the testimony in this case indicates, the purpose of the storage allowance was "to help the income of the farmer," and "to keep the corn in the county where it can be moved better." Resealing prolongs what has been referred to as the farmer's "free ride of the market." (*Thompson* v. *Commissioner of Internal Revenue* (5th cir. 1963) 322 F.2d, 122, 130.) It does not, however, make the Corporation the owner of the corn.

It is our conclusion that this transaction is a chattel mortgage and loan, and not as plaintiffs have contended, a sale with power to repurchase. The intention of the parties is explicit in the documents themselves, which refer throughout to the "loan" and the "mortgage," and the substance of the transaction does not contradict that characterization. Our conclusion is in accord with those of the other courts which have considered similar problems. See *Thompson* v. *Arnold,* 238 Ind. 177, 147 N.E.2d 903 (1958); *Burhans* v. *County of Kern,* 170 Cal. A. 2d 218, 338 P.2d 546, 550 (1959); *United States* v. *Springfield Fire & Marine Ins. Co.* 107 F. Supp. 753, 755 (1952), affirmed 207 F.2d 935 (1953).

The plaintiffs have not satisfied the heavy burden that they must meet in order to establish the exemption that they claim. "Every presumption is against the intention of the State to exempt property from taxation. * * * The burden of sustaining the right of exemption rests upon the party seeking it. He must show clearly that the specific property for which exemption is claimed is within the contemplation of the law. (*Coyne Electrical School* v. *Paschen,* 12 Ill.2d 387; *Rogers Park Post No. 108* v. *Brenza,* 8 Ill.2d 286; *International College of Surgeons* v. *Brenza,* 8 Ill.2d 141; *People ex rel. Nelson* v. *Rockford Lodge B.P.O.E.* 348 Ill. 528; *People ex rel. Baldwin* v. *Jessamine Withers Home,* 312 Ill. 136." *Rotary International* v. *Paschen,* 14 Ill.2d 480, 487; *Kiwanis International* v. *Lorenz,* 23 Ill.2d 141, 145-6.

As an alternative contention, the plaintiffs assert that the board of review acted fraudulently in assessing the corn. It is apparently agreed between the parties that when the board notified the plaintiffs to appear before it with regard to unassessed grain, one of the plaintiffs appeared, and the board agreed that since an identical case relating to 1961 taxes was pending in the circuit court, it would await the decision in that case before doing anything further. Thereafter, the board assessed the corn without waiting for the decision of the court. Whether sufficient time then remained for filing objections before the board is disputed, and the record does not afford a basis for settling the dispute. Upon the undisputed facts, however, we see no fraud. The board is required to complete its work within a period specified by statute. (Ill. Rev. Stat. 1961, chap. 120, par. 588.) The agreement relied upon by the plaintiffs can not, upon the record before us, be interpreted as an undertaking by the board to abdicate its statutory duty in the event that the circuit court should fail to decide a particular case before the expiration of the period within which it is required to act.

The decree of the circuit court of De Witt County is reversed.

*Decree reversed.*

Mr. JUSTICE HERSHEY, dissenting:

The majority opinion bases its conclusion upon the frequent use of the words "mortgage" and "loan". This is an equitable proceeding in which it has been repeatedly held that the court will look through form to the substance of the transaction. This sealing agreement is in substance a sale with option to repurchase. It is intended to benefit the producer by enabling him to exercise his option should the market price of the grain make it wise for him to do so. If he still owns the corn after sealing there would be no obligation on the part of the Commodity Credit Corporation to pay storage on it, which the resealing agreement provides. That the sealing amounts to a sale is also clear from the fact that the producer pays income tax on the purchase price received by him.

This entire agreement is an anomaly in the law. It can hardly be classed as a mortgage and loan, as it provides that either side may withdraw before the maturity date.

The majority opinion refers to other jurisdictions which have held that the corn still belongs to the producer and is subject to personal property tax. These other jurisdictions have no higher authority than ours and, while they should not be ignored, we are not required to follow them.

The opinion also refers to the burden of the taxpayer to prove a claimed exemption and cites many cases which rightly lay down that rule. But that is not exactly the issue here. The question here is who owns the corn. The facts are not in dispute, as they often are when a use exemption is involved. The cases cited are not applicable to the situation here.

I feel that the trial court was right, and I respectfully dissent from the reversal of the decree.