HAMMOND LEAD PRODUCTS, INC., Appellant (Petitioner),

v.

STATE OF INDIANA TAX COMMIS-SIONERS and State of Indiana Department of Revenue, Appellee (Respondents).

No. 45S00–9005–TA–341.

Supreme Court of Indiana.

Aug. 6, 1991.

---

Kenneth D. Reed, Abrahamson, Reed & Adley, Hammond, for appellant.

Linley E. Pearson, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Appellant, Hammond Lead Products, Inc., (Hammond Lead) seeks review of an Indiana Tax Court decision denying claims for a refund of taxes assessed for the years 1980–84. *Hammond Lead Products, Inc. v. Tax Comm'rs* (1990), Ind.Tax, 549 N.E.2d 424. In denying Hammond Lead's claim, the Tax Court determined that interest income earned by Hammond Lead under repurchase agreements between it and the Mercantile National Bank of Hammond, Indiana (Bank) was subject to Indiana adjusted gross income tax. We affirm.

Restated, Hammond Lead raises the following issues: 1) whether the imposition of the subject tax constitutes a burden on the United States Treasury; 2) whether the Tax Court properly applied existing law; 3) whether Hammond Lead legally owned the securities.

The Tax Court summarized the facts as follows. During the tax years involved, 1980 through and including 1984, Hammond Lead did all of its commercial banking with the Bank. During this time, Hammond Lead sought to periodically invest its excess cash reserves on a temporary basis. Hammond Lead wanted to obtain interest on its excess cash, but also desired flexibility. The Bank routinely purchased U.S. Treasury Notes and obligations for its own portfolio. The Bank accommodated its customers and clientele by selling these obligations from its portfolio to its customers. Hammond Lead and the Bank entered into agreements whereby the Bank would sell U.S. Treasury Bills and Notes to Hammond Lead from its portfolio. These U.S. Treasury obligations were segregated and separately held on the Bank's records for Hammond Lead's account. The Bank also issued safekeeping receipts to Hammond Lead which evidenced the transactions. At the time the Bank sold the obligations to Hammond Lead, Hammond Lead simultaneously agreed to resell them to the Bank

at an agreed upon price and on a certain date. The Bank agreed to pay Hammond Lead interest at a fixed rate for the period between the original sale and the repurchase.

Hammond Lead paid the Indiana adjusted income tax on the interest income derived from the repurchase agreements with the Bank and filed claims for refund with the Indiana Department of Revenue. Hammond Lead claimed the income was exempt from taxation under 31 U.S.C. § 3124 and Ind.Code § 6–3–1–3.5(b). The Department disagreed, claiming Hammond Lead did not own the U.S. Treasury Notes and obligations. As Hammond Lead did not own the securities, it was not entitled to the exemption. Our Tax Court described the question as follows:

> The issue to be decided is whether Hammond Lead's interest income, earned pursuant to the repurchase agreements, is exempt from Indiana adjusted gross income tax. Indiana law imposes a tax on the adjusted gross income of every resident corporation. IC 6–3–2–1. The "adjusted gross income" of corporations, under IC 6–3, means the same as "taxable income (as defined in Section 63 of the Internal Revenue Code)" less "income that is exempt from taxation under IC 6–3 by the Constitution and statutes of the United States." IC 6–3–1–3.5(b)(1). Thus, Indiana law implements 31 U.S.C. § 3124 (1982) (formerly 31 U.S.C. § 742, amended 1959) which provides:
>
> (a) Stocks and obligations of the United States Government are exempt from taxation by a state or a political subdivision of a state. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except—
>
> (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> (2) an estate or inheritance tax.
>
> The Department contends that the repurchase agreement between Hammond

Lead and the Bank is nothing more than a short-term collateralized loan and does not fall within the scope of the immunity provided by 31 U.S.C. § 3124.

*Hammond Lead*, 549 N.E.2d at 425 (included footnote omitted).

██ Hammond Lead's burden in this proceeding is an onerous one. This Court "shall not set aside the findings or judgment of the Tax Court unless clearly erroneous...." Ind. Tax Court Rule 10. This Court will not reweigh the evidence or determine the credibility of witnesses, but will consider only evidence supportive of the judgment and reasonable inferences drawn therefrom.

> A finding is clearly erroneous if, considering the record as a whole, the reviewing court is left with the definite and firm conviction that a mistake was made, even though there is some evidence to support the finding below.

*Assoc. Milk Prod. v. Dep't of Revenue* (1989), Ind., 534 N.E.2d 715, 716 (included citation omitted).

One factor bearing on whether income earned pursuant to repurchase agreements of United States obligations is exempt from state taxation is "whether there is a burden on the U.S. Treasury if the exemption is denied." *Hammond Lead*, 549 N.E.2d at 429. As correctly observed by Judge Fisher, Hammond Lead failed to prove any such burden. *Id.*

██ In its brief to this Court, Hammond Lead concedes it failed to offer testimony on this subject but directs our attention to 12 C.F.R. § 32.103(a), a copy of which was introduced by Hammond Lead at trial. Characterizing this regulation as an interpretation by the U.S. Comptroller of Currency holding that U.S. Treasury Notes subject to a repurchase agreement are not a "loan or extension of credit," Hammond Lead maintains that it owns the U.S. obligations and is therefore, as owner, entitled to the exemption.

We disagree. The regulation relied upon by Hammond Lead continues, stating that repurchase agreements involving specified securities are not loans or extensions of credit *"for purposes of this part."* The

regulation is relevant to commercial banks and the general scheme of lending limits. It has no bearing on the Internal Revenue Code or judicial interpretation of repurchase agreements.

 Hammond Lead next emphasizes the general history and policies underlying the tax-exempt status of income derived from U.S. Treasury obligations, urging that the interest earned by it was tax exempt. However, the interest on the U.S. obligations, paid by the U.S. government to the Bank, was not taxed by the State. Hammond Lead received interest income pursuant to its agreement with the Bank and was properly taxed. The Tax Court correctly held that Hammond Lead's claims for refund were appropriately denied.

Hammond Lead contends that the Tax Court should have followed the reasoning in *Estate of Haldon Kraft v. Indiana Dep't of State Revenue* (Dec. 2, 1986), Hamilton Circuit Court, Cause No. C85–789. We find no error in Judge Fisher's analysis rejecting this suggestion.

 Hammond Lead argues that it owned the U.S. obligations, and that as owner, it was entitled to the exemption. The State responds that the exemption is available only to a taxpayer who actually owns the securities. The Tax Court correctly observed that in determining ownership, a court may consider whether the party claiming such bears the risk of market fluctuations, whether that party has the ability to sell the securities to a third party, whether the seller or the United States government pays the interest income and whether the obligations must be considered in computing the tax. The repurchase agreements between Hammond Lead and the Bank permitted the Bank to "reserve ... the right of substitution of securities of equal value and equal or better quality." Under no circumstances could Hammond Lead sell the securities during the term of the agreement. The Tax Court properly concluded that Hammond Lead did not own the securities.

Hammond Lead argues that it and the Bank never intended anything but a sale, as distinguished from a collateralized loan. The substance of the transactions indicates otherwise, and Hammond Lead's arguments fail to demonstrate any clear error on the part of the Tax Court's analysis. Following a review of instructive case law from other jurisdictions, the Tax Court concluded that

> the repurchase agreement with Hammond Lead removes the elements of ownership and the source of interest necessary for exemption. Although the Bank and Hammond Lead may have effectuated a sale for other purposes, for tax purposes the result is, in effect, a collateralized loan. Therefore, Hammond Lead's claims for refund were appropriately denied.

*Hammond Lead*, 549 N.E.2d at 429.

We conclude that the Tax Court correctly construed Ind.Code §§ 6–3–2–1, 6–3–1–3.5(b)(1), and 31 U.S.C. § 3124 in affirming the denial of the exemption. The judgment of the Tax Court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and KRAHULIK, JJ., concur.