HARDWARE WHOLESALERS,
INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T05–8903–TA–00008.

Tax Court of Indiana.

Aug. 26, 1992.

---

David A. Haist, Melani W. Wilson, John C. Barce, Barnes & Thornburg, Fort Wayne, for petitioner.

Linley E. Pearson, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Hardware Wholesalers, Inc. (HWI) claims a refund from the Indiana Department of State Revenue (the Department) of intangibles tax assessed and collected together with interest in the amount of $67,-391.73 for the years 1983, 1984, and 1985, plus additional interest accrued. Pursuant to IND.CODE 6–5.1–2–1 (repealed 1989), the tax was assessed on transactions involving the transfer of HWI's excess cash holdings. This case is before the court on the HWI's motion for summary judgment.

## FACTS

HWI is a multi-state hardware wholesaler incorporated in Indiana with its principal place of business in Allen County. All of HWI's warehouse distribution centers are located outside the state of Indiana, and over one-half of its business income is derived from outside the state.

During the taxable years ending June 30, 1983, 1984, and 1985, HWI entered into written agreements, commonly known as repurchase agreements, with the Fort Wayne National Bank (Bank). The agreements provided that the Bank would sell to HWI various obligations of the United States Government and would then repurchase the obligations at an agreed upon price and on a certain date. The Bank agreed to pay HWI interest at a fixed rate for the period between the original sale and the repurchase.

The term "repurchase agreements," however, does not accurately describe the actual transactions that occurred between HWI and the Bank. Although these agreements purport to evidence the buying and selling of United States obligations, in reality they denote the transfer of HWI's funds to the Bank. Ownership of the United States securities remained, at all times, with the Bank. HWI did not buy the securities from the Bank, but instead simply placed its funds in the Bank on a short-term basis. The funds HWI deposited pursuant to the repurchase agreements were excess cash holdings derived from sales of its inventory warehoused and distributed from locations outside Indiana. At the future date specified in the agreements, the Bank transferred the cash holdings back to HWI, plus interest. By casting its transfer of funds in the form of repurchase agreements, HWI obtained a rate of interest higher than the Bank could pay on a simple deposit or certificate of deposit.

HWI timely prepared and filed Indiana tax returns for the taxable years, but did not include the United States Government obligations purchased from the Bank. The Department audited HWI for the taxable years and proposed an additional intangibles tax assessment in the amounts of $19,495.64 for 1983, $12,158.57 for 1984, and $16,133.81 for 1985 (totalling $47,788.02), plus interest and penalties.

The Department denied HWI's protest after a hearing but determined not to assess penalties. In October, 1988, HWI paid the intangibles tax and interest totalling $57,881.92. On November 2, 1988, HWI paid the Department additional interest totalling $9,509.81. On November 3, 1988, HWI filed a claim for refund of $67,391.73. In addition, HWI requested refunds of all amounts which may be legally refunded, inclusive of interest paid by HWI and statutory interest as provided by law. The Department denied HWI's claims for refund, and HWI now petitions this court for refund of intangibles tax. Other facts will be included as needed below.

## ISSUE

Whether the transfer of funds pursuant to the repurchase agreements between HWI and the Bank are subject to Indiana Intangibles Tax? [1]

## STANDARD OF REVIEW

The court shall grant a motion for summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). The parties stipulate and the court agrees that this case presents no genuine issue of material fact. The dispute therefore concerns whether the transfers of funds by HWI to the Bank are deposits within the meaning of IND.CODE 6–5.1–5–7(15) (repealed 1989).

## DISCUSSION & DECISION

Until 1989, Indiana imposed an intangibles tax on residents and domiciliaries of Indiana for the following:

(1) executing, selling, assigning, transferring, renewing, removing, consigning, mailing, shipping, trading-in, controlling, or enforcing an intangible;

(2) receiving income, increase, issues, or profits of an intangible;

(3) passing an intangible or income from an intangible to another person by will, gift, or interstate succession; or

(4) having an intangible classified for tax purposes.

IC 6–5.1–2–1(a).

The intangibles tax statute lists the following intangibles as subject to taxation:

(1) *a promissory note;*

(2) a share of stock in a foreign corporation;

(3) a bond;

(4) a debenture;

(5) a postal savings certificate;

---

1. HWI also raises the issue of the constitutionality of the intangibles tax. We need not consider such because of the decision herein and because our supreme court recently held the Indiana intangibles tax constitutional in *Indiana Department of State Revenue v. Felix* (1991), Ind., 571 N.E.2d 287, *cert. dismissed,* (1992), — U.S. —, 112 S.Ct. 1073, 117 L.Ed.2d 278.

(6) equity in a brokerage or trading account;

(7) *a deposit of money;*

(8) a loan account;

(9) a debt instrument with interest coupons;

(10) a registered corporate security evidencing a debt;

(11) a written instrument or certificate evidencing a debt, including a mortgage, a chattel mortgage, a bill of sale, and a conditional sales contract;

(12) a written instrument securing an unwritten debt;

(13) a written instrument evidencing an exchange of property when the ultimate transfer of title is intended;

(14) a written contract for payment of money; and

(15) an instrument bearing interest for the benefit of the holder of that instrument or the holder of another instrument.

IND.CODE 6–5.1–1–1 (repealed 1989) (emphasis added). Certain intangibles, however, are exempt from the tax imposed by IC 6–5.1–2–1. "A person is exempt from the intangibles tax measured by the following intangibles: ... deposits or certificates of deposit in banks in Indiana...." IC 6–5.1–5–7(15) (emphasis added).

HWI contends its transfer of funds to the Bank constitutes deposits of money in an Indiana bank, thus qualifying the transactions for exemption from the Indiana intangibles tax pursuant to the above section. The Department, on the other hand, contends the agreements between HWI and the Bank constitute collateralized loans and therefore are not exempt.

When determining whether HWI is entitled to an exemption from intangibles tax, the court recognizes that exemption statutes must be strictly construed in favor of taxation. *Caylor–Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 768, *aff'd sub nom.*, (1992), Ind., 587 N.E.2d 1311. In construing statutes, "words and phrases should be taken in their plain, ordinary and usual sense, unless such a construction is plainly repugnant to the intent of the legislature or the context of the statute." *Scheid v. State Bd. of Tax Comm'rs* (1990), Ind.Tax, 560 N.E.2d 1283, 1286 (citing IND.CODE 1–1–4–1).

## LOAN

Generally, a loan is

a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows.

We find the following statement in 39 Cyc. 926: 'In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely [principle], together with such additional sums as may be agreed upon for its use [interest]....'

*Union Sec., Inc. v. Merchants' Trust & Sav. Co.* (1933), 205 Ind. 127, 135, 185 N.E. 150, 152; *see also Wayne Pump Co. v. Department of Treasury* (1953), 232 Ind. 147, 156, 110 N.E.2d 284, 287.

More precisely, a loan is " 'anything furnished for temporary use to a person *at his request,* on the condition that it shall be returned, or its equivalent in kind, with or without a compensation for its use....' " *Liberty Nat'l Bank and Trust Co. v. Travelers Indem. Co.* (1968), 58 Misc.2d 443, 446, 295 N.Y.S.2d 983, 986 (quoting WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (1964)) (emphasis added). Accordingly, a transaction is a loan when a lender furnishes anything: (1) for temporary use, (2) at another's (the borrower) request, (3) on the condition it or its equivalent must be returned.

The Department contends HWI loaned money to the Bank, thus the money loaned is subject to the intangibles tax. The repurchase agreements between HWI and the Bank provided for the temporary transfer of HWI's funds. The Bank, however, did not request the use of the funds from HWI. Rather, HWI initiated the transaction by depositing its funds in the Bank. Consequently, HWI did not loan money to the Bank.

## HAMMOND LEAD

The Department contends that this court's decision in *Hammond Lead Products, Inc. v. State of Indiana Tax Commissioners* (1990), Ind.Tax, 549 N.E.2d 424, *aff'd*, (1991), Ind., 575 N.E.2d 998, is dispositive of the case at bar. In its contention, the Department maintains that in *Hammond Lead* this court held repurchase agreements are collateralized loans and that based on the elements discussed in *Hammond Lead*, ownership of the securities and risk of market fluctuations rest with the Bank in the case at bar, and not with HWI. The Department concludes, therefore, that HWI does not own the obligations and, therefore, is not exempt from intangibles tax. HWI, on the other hand, asserts that *Hammond Lead* is not controlling in this case because the court did not hold that repurchase agreements were collateralized loans, but instead stated in its decision that the result of repurchase agreements was, "in effect, a collateralized loan." *Hammond Lead*, 549 N.E.2d at 429.

In *Hammond Lead* this court held that the interest income earned pursuant to repurchase agreements was not exempt from gross income tax. This court and our supreme court both stated, but did not hold, that the result of Hammond Lead's repurchase agreements was, *"in effect*, a collateralized loan." *Id.* (emphasis added); 575 N.E.2d at 1001 (emphasis added). The court used the phrase "in effect" to show that the repurchase agreements were *similar to* collateralized loans. The court did not, however, hold that repurchase agreements *are* collateralized loans, as the Department incorrectly contends. Moreover, the court equally could have stated that the result of the repurchase agreements was "in effect, a bank deposit" without affecting the taxability of Hammond Lead's interest income.

Furthermore, the court was asked to focus on the ownership of the obligations not their nature in *Hammond Lead*. In determining whether Hammond Lead was entitled to an exemption on its gross income taxes, the court first analyzed certain factors to determine whether Hammond Lead had accepted the risks and responsibilities of ownership of the securities for which it sought exemption. The Department contends that consideration of these factors in the case at bar places the risks and responsibilities on the Bank rather than on HWI, just as the risk rested with the bank in *Hammond Lead*, so that by analogy the repurchase agreements in the case at bar are also collateralized loans. These factors, however, merely determine ownership of the obligations, not the substance of the transactions. Thus, Hammond Lead had to own the obligations to be exempt from income tax on the interest earned on those obligations.

■ Moreover, whether HWI owns the United States obligations is not the issue in the case at bar. Here, the tax was imposed on the funds themselves rather than on the interest earned on the investment of those funds. Therefore, it is unnecessary for the court to determine ownership of the obligations. Accordingly, the court finds *Hammond Lead* is not controlling in the case at bar.

## DEPOSIT

HWI contends that its transactions involving repurchase agreements constitute deposits in the Bank that are exempt from taxation under IC 6–5.1–5–7(15). "In construing the meaning of certain words contained in a statute, the legislative definition of the same words in another act (although not conclusive) is entitled to consideration in construing the same words when used in another statute upon the same, or related, subject." *Adkins v. Indiana Employment Sec. Div.* (1946), 117 Ind.App. 132, 137, 70 N.E.2d 31, 33 (citing *Ralston v. Ryan* (1940), 217 Ind. 482, 484, 29 N.E.2d 202; *State ex rel. v. Grange* (1929), 200 Ind. 506, 509, 165 N.E. 239; *Dreves, Inc., v. Oslo School Township of Elkhart County* (1940), 217 Ind. 388, 28 N.E.2d 252, 128 A.L.R. 1405). Furthermore, "[s]tatutes in *pari materia* should, if possible, be construed together and harmonized to effectuate the intent of the Legislature." *Smock v. Coots* (1975), 165 Ind.App. 474, 480, 333

N.E.2d 119, 123 (citing *Wayne Township v. Brown* (1933), 205 Ind. 437, 186 N.E. 841), *trans. denied.*

Although Article 5.1 of Title 6, the Intangibles Tax Act, provides no definition of the word "deposit," the word is defined in Article 5, the Financial Institution Tax Act. Both of these articles provide for the imposition of taxes, and in that context, both discuss bank deposits. Furthermore, the intangibles tax was included in Article 5 until 1977 when the legislature created the separate article solely for the intangibles tax. Therefore, the legislative definition provided by Article 5 should be construed in harmony with Article 5.1 because the two articles are in *pari materia.*

■ IND.CODE 6–5–10–1 (enacted 1983) provides:

> 'Deposit' means money that is deposited in a bank, that is evidenced by any means, and that may be withdrawn, on demand or otherwise, by:
>
> (1) the owner of the money;
>
> (2) the trustee of the money; or
>
> (3) a person who has a beneficial interest in the money.[2]

Therefore, four requirements must be met for a transaction to constitute a deposit: (1) money deposited in a bank[3], (2) evidenced by any means, (3) withdrawn on demand or otherwise, (4) by the owner, trustee, or a beneficiary.

■ First, HWI deposited money in the Bank. HWI's excess cash was deposited in the Bank according to the repurchase agreements. Second, the deposits are evidenced by the written repurchase agreements. Third, HWI may withdraw the deposited funds according to the repurchase

agreements on a specified date. All that is required under this element of a deposit is withdrawal "on demand or otherwise." The specified date in the repurchase agreements satisfies the "otherwise" portion of this third element of a deposit. Finally, HWI, the owner of the funds transferred to the Bank pursuant to the repurchase agreements, has the right to withdraw on the specified date. Thus, the transactions concerning the repurchase agreements do not meet the definition of a loan, but meet all the requirements of the definition of a deposit.

■ "The test which determines whether the transactions between the parties was a loan or a sale is the intention of the parties. This intention is to be ascertained from their written agreement and the entire transaction." *Wayne Pump Co.*, 232 Ind. at 156, 110 N.E.2d at 288. Analogously, the test to determine whether HWI's transfers of funds to the Bank were deposits or loans is the intention of the two parties. Because bank regulatory rules restrict the interest rates banks can pay on deposits, banks frequently structure deposits as repurchase agreements in order to avoid these restrictions. Consequently, HWI and the Bank intentionally cast the deposits of HWI's funds in the form of repurchase agreements rather than simple deposits because the repurchase transactions received a better interest rate. *Transcript* at 9. Thus, the parties intended for the transactions between HWI and the Bank to be deposits of HWI's funds.

Moreover, "[t]he substance, rather than the form, of transactions determines their tax consequences." *Mason Metals Co. v. Indiana Dep't of State Revenue* (1992),

---

**2.** IC 6–5–10–1 pertains to two of the taxable years at issue, 1984 and 1985, and IND.CODE 6–5–6–1 (repealed 1983) pertains to the taxable year 1983. IC 6–5–6–1(c) provided:

> The term 'deposits' means deposits in any bank or trust company which the person owning, holding in trust or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account, pass book or otherwise.

In repealing IC 6–5–6–1 and enacting IC 6–5–10–1, the Legislature merely rephrased the defini-

tion of "deposit" without changing its substance. Therefore, the court uses IC 6–5–10–1 to analyze all the transactions in this case.

**3.** Although it is improper to define a word using the word being defined, the court uses the Legislature's wording for the purposes of this case. The court further notes that the dictionary defines deposit as: "money that is *deposited* in a bank." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 605 (1981) (emphasis added).

Ind.Tax, 590 N.E.2d 672, 675 (citing *Meridian Mortgage Co. v. State* (1979), 182 Ind. App. 328, 341, 395 N.E.2d 433, 440, *trans. denied* ). Although in form the transactions between HWI and the Bank are repurchase agreements, in substance they are deposits in an Indiana bank as evidenced by the parties' intent. Accordingly, HWI's transactions are deposits in an Indiana bank and as such are exempt from intangibles tax for the taxable years at issue.

The court finds that HWI's motion for summary judgment be and the same is hereby granted.