**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Respondent Below)**

v.

**HARDWARE WHOLESALERS, INC., Appellee (Petitioner Below.)**

No. 49S05–9303–TA–357.

Supreme Court of Indiana.

Oct. 26, 1993.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for appellant.

David A. Haist, John C. Barce, Fort Wayne, for appellee.

SHEPARD, Chief Justice.

This challenge to an assessment of intangibles tax presents a single question: are. fund transactions under repurchase agreements Indiana bank "deposits" exempt from the Indiana intangibles tax? We hold that they are not.

### A. Facts and Procedural History

The Indiana Department of State Revenue assessed intangibles tax[1] against Hardware Wholesalers, Inc. ("HWI") after audits of the tax years 1983, 1984 and 1985. HWI filed a timely protest and paid $67,391 in taxes assessed for repurchase agreements between HWI and Fort Wayne National Bank. The Department denied HWI's claims for a refund, and HWI filed a petition for review with the Indiana Tax Court. The Tax Court granted summary judgment for HWI, finding that the repurchase transactions were "deposits" in an

Indiana bank and were thus exempt from the intangibles tax under Ind.Code Ann. § 6–5.1–5–7(15) (West 1989). *Hardware Wholesalers v. Department of State Revenue* (1992), Ind.Tax, 597 N.E.2d 1339.[2] The Department petitioned this Court for review of the Tax Court's final decision. Ind.Appellate Rule 18. We have granted the petition.

The transactions at issue involved repurchase agreements under which HWI transferred its excess cash to the bank. The agreements provided that the bank would sell HWI various obligations of the U.S. government. HWI simultaneously agreed to resell them to the bank at an established price on a date certain. The bank reserved the right to substitute securities of like value and quality for the identified obligations. It further agreed to pay HWI interest at a fixed rate for the period between sale and repurchase.

HWI entered into the transactions to obtain a greater return on its capital than otherwise allowed under then-existing federal interest rate ceilings on bank deposits. Federal regulations had expressly excluded repurchase ·agreements from the regulatory scheme governing interest on deposits. 12 C.F.R. § 329.10(b)(2) (1984). *See generally Data on Federal Funds and Repurchase Agreements*, 66 Fed.Res.Bull. 321 (Apr. 1980).

Although the Department contends and the Tax Court's opinion assumes that this case cannot be resolved without deciding whether repurchase agreement transactions are collateralized loans,[3] our review will be complete once we have determined

---

1. In 1989 the General Assembly repealed the Intangibles Tax Act, Ind.Code Ann. Art. 6–5.1. Act of Apr. 26, 1989, Pub.L. No. 80–1989, § 18, 1989 Ind.Acts 919.

2. In its petition, HWI contended that the transactions fell within three separate exemptions: Ind.Code Ann. § 6–5.1–5–7(12) (obligations exempt from state taxation by federal law); Ind. Code Ann. § 6–5.1–5–7(15) (exempt as deposits or certificates of deposit in Indiana banks); and Ind.Code Ann. § 6–5.1–5–7(17) (exempt as intangibles with a business situs outside Indiana). In its motion for summary judgment, however, HWI contended solely that the transactions were "deposits or certificates of deposit in banks

in Indiana." Holding that the repurchase transactions were bank deposits, the Tax Court did not address HWI's alternative contention that they were certificates of deposit. Our review of the Tax Court's judgment is limited solely to the deposit issue.

3. The Department apparently persuaded the Tax Court that the repurchase transactions must be either collateralized loans or deposits. The Tax Court applied the respective definitions and concluded that these transactions fall into the latter category. *Hardware Wholesalers*, 597 N.E.2d at 1342–45.

whether the transactions are bank "deposits." HWI precisely states the issue before us: "whether the transactions by which funds owned by [HWI] were deposited with [the bank] and subsequently were withdrawn by HWI pursuant to agreements between HWI and the [b]ank constitute 'deposits ... in banks in Indiana' for purposes of the exemption from the Intangibles Tax." (Brief of Appellee, HWI, at 1).

### B. Does Hammond Lead Decide This Case?

The Department contends that the Tax Court should have been bound by its statement in *Hammond Lead Products v. State of Indiana Tax Commissioners* (1990), Ind.Tax, 549 N.E.2d 424, 429, *aff'd*, Ind., 575 N.E.2d 998 (1991), that repurchase agreements are "in effect ... collateralized loan[s]." The Department maintains that failure to follow this caselaw creates an ambiguity which hinders administration of the tax laws.

HWI responds that the Tax Court's decision is not inconsistent with *Hammond Lead*. It says the issue in *Hammond Lead* was not classification of repurchase agreements, but rather ownership of the underlying government obligations for purposes of determining whether the interest in the transaction was exempt from gross income tax under the exemption for U.S. government obligations. The court's consideration was thus limited, HWI argues, to whether the interest recipient was the owner of the obligations. Considering the elements of ownership, the court concluded that the taxpayer did not own the obligations and that its interest from the transaction was therefore fully taxable. Moreover, HWI contends, *Hammond Lead* has marginal bearing on the present case because it involved only the application of the adjusted gross income tax. The parties had stipulated that the intangibles tax was not at issue.

We agree with HWI and the Tax Court that *Hammond Lead* does not answer the question presented in this case. The statement that repurchase transactions are "in

effect ... collateralized loan[s]," *Hammond Lead*, 549 N.E.2d at 429, was dictum because the court was not required to classify such transactions, but only to determine whether such transactions really transferred ownership of the underlying securities. The court's language indicates merely that as between a sale and a loan, repurchase agreement transactions more resemble loans and that the bank retained ownership of the securities for tax purposes.

### C. Are Repurchase Agreements "Deposits"?

Under Ind.Code Ann. § 6–5.1–2–1 (West 1989) (repealed effective Nov. 10, 1988), Indiana residents and domiciliaries owed an intangibles tax for the exercise of certain privileges in regard to intangibles. "Intangible" was defined to include a list of fifteen categories such as debentures, deposits of money, loan accounts, debt instruments with interest coupons, written contracts for the payment of money, and instruments bearing interest for the benefit of the holder of that instrument or the holder of another instrument. Ind.Code Ann. § 6–5.1–1–1 (West 1989). The applicability of the tax is not challenged.

The legislature exempted a number of items from the intangibles tax, including "deposits or certificates of deposit in banks in Indiana." Ind.Code Ann. § 6–5.1–5–7(15) (West 1989). To determine whether HWI's repurchase agreement transactions were exempt from the tax, we must first consider the meaning of the term "deposit." A broad definition of this word would encompass many of the things of value which customers take to the bank and leave there, such as stocks for trust accounts or money to pay real estate taxes. A narrow definition would cover only those items defined in a particular statute. Because the Intangibles Tax Act does not define "deposit," we look to sources beyond the text of the act itself.

HWI contends that we should apply the definition of "deposit" in the Bank Tax Act.[4] The bank tax definition applies with

---

**4.** Act of February 28, 1933, ch. 83, § 1(c), 1933 Ind.Acts 545, provided:

equal force to the intangibles tax, HWI contends, because both acts were passed on the same day by the General Assembly and because the acts relate to the same subject. According to HWI, *Lutz v. Arnold* (1935), 208 Ind. 480, 500, 193 N.E. 840, 848, requires this Court to construe the two acts together. In *Lutz*, this Court stated:

> Statutes which relate to the same thing, or to the same subject, person or object are in *pari materia* and it is presumed that such acts are imbued with the same spirit and actuated by the same policy, ... and they should be construed together as if parts of the same act, ... to ·determine their affect.... This applies with peculiar force to statutes passed at the same session of the legislature....

*Id.* (quoting *State ex rel. Baker v. Grange* (1929), 200 Ind. 506, 509, 165 N.E. 239, 240).

The holding in *Lutz* is not as broad as HWI contends. In *Lutz* this Court construed the acts together in resolving a constitutional challenge to the exclusion of entities such as banks from the intangibles tax. 208 Ind. at 500, 193 N.E. at 848. Because banks are taxed under the Bank Tax Act, the Court held that their exclusion from the intangibles tax was not the result of an arbitrary and unreasonable classification. *Id.* For purposes of the taxation scheme generally, therefore, the two acts relate to the same subject and were appropriately construed together.

█ *Lutz* does not require construing similar provisions of two acts as though they were the same, even two acts held to be in *pari materia,* when those provisions are driven by different legislative policies. *Cf. Board of Comm'rs of LaGrange County v. Cutler* (1855), 6 Ind. 354 (two provisions related to same subject, passed at same legislative session and construed *in pari materia* held driven by different legislative intents). In this case, for example, we must determine the meaning of "deposit" in that part of the intangibles act creating exemptions for those otherwise subject to the tax. Banks, of course, were exempted not only from paying intangibles tax on "deposits," but from the intangibles tax altogether. Ind.Code Ann. § 6–5.1–5–6 (West 1989). Their tax liability derives from the Bank Tax Act and is based not on the value of non-exempt intangibles, but rather on the value of deposits. Ind.Code Ann. § 6–5–10–3 (West 1989).

█ The fact that "taxable deposits" form the primary basis of bank tax liability is strong evidence that the term "deposit" is used in the Bank Tax Act in a broader sense than it is in the Intangibles Act where it is used to describe an exemption available to those whose tax liability is calculated with reference to intangibles not so exempted. *Cf. Ralston v. Ryan* (1940), 217 Ind. 482, 29 N.E.2d 202 (finding no evidence that term "qualified licensed engineer" used differently in two distinct acts.) Moreover, if the legislature had intended for "deposit" to carry a meaning as broad as the Bank Tax Act's "deposit," it would not have specified in the Intangibles Tax Act that certificates of deposit in Indiana banks also were exempt since such certificates are included in the Bank Tax Act's definition of "deposit."

█ Finally, we think it appropriate to limit the meaning of "deposit" to its ordinary and usual sense because ambiguous exemption statutes are strictly construed in favor of taxation and against the party seeking exemption. This firmly established principle of statutory construction is based upon the notion that an exemption from taxation shifts the tax burden to taxpayers who fall outside the exempted class.

(c) The term "deposits" means deposits in any bank or trust company which the person owning, holding in trust or having the beneficial interest therein is entitled to withdraw in money, whether on demand or not, and whether evidenced by commercial or checking account, certificate of deposit, savings account, pass book or otherwise.

Adopted in 1983, the current version of the definition provides: "'Deposit' means money that is deposited in a bank, that is evidenced by any means, and that may be withdrawn, on demand or otherwise, by: (1) the owner of the money; (2) the trustee of the money; or (3) a person who has a beneficial interest in the money." Ind.Code Ann. § 6–5–10–1 (West 1989).

*Orr v. Baker* (1853), 4 Ind. 86. In *Orr,* we explained:

> Under our institutions, there is no good reason why one species of property, or one class of persons, should be exempt from the common burdens which, for the common good, all ought equally to bear. Hence these exemptions, as they are contrary to common right, are not to be favored by the courts.

*Id.* at 88.

The quintessential example of a bank deposit is a checking or savings account. A "deposit" is commonly understood to mean the placement of money in a bank for safekeeping, subject to the order of the depositor, and payable at any time in an equal sum. *E.g., Warren v. Nix,* 97 Ark. 374, 135 S.W. 896 (1911); *Houston v. Braden,* 37 S.W. 467 (Tx.Civ.App.1896); *see also* 10 Am.Jur.2d *Banks* § 360 (1963) (deposit consists of delivery of money or funds into the possession of the bank, whose property the deposit becomes, in exchange for a credit of the amount represented by the deposit, against which credit the depositor may draw in the usual course of a bank's business).

■ Although one segment of the repurchase transactions between HWI and the bank involved a deposit of money with the bank, viewing the economic realities of the transactions as a whole, *see Union Sec. Inc. v. Merchants' Travel & Savs. Co.* (1933), 205 Ind. 127, 185 N.E. 150, it is evident the parties intended them to be an investment vehicle outside the scope of a traditional deposit.[5] Once the parties incorporated a sale and repurchase of government securities into their funds transfers, the transactions became something other than "deposits" as they are commonly and usually understood.

We hold that the funds transactions under repurchase agreements between HWI and the bank were not "deposits ... in banks in Indiana" for purposes of exemption from the intangibles tax, and that the Tax Court's judgment to the contrary is clearly erroneous. *See* Ind.Tax Court Rule 10. Without expounding further on the classification of such transactions, we note that our conclusion accords with the positions of various commentators who have discussed the nature of repurchase agreements.[6]

We grant the Department of Revenue's petition for review, vacate the judgment of the Tax Court, and affirm the assessment of the Department.

DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents without separate opinion.

---

**5.** *See generally Securities & Exch. Comm'n v. Miller,* 495 F.Supp. 465, 471 (S.D.N.Y.1980) (Repurchase agreements "have come to be viewed by many as 'income-generating substitutes for demand deposits at commercial banks.' ") (citation omitted).

**6.** *See, e.g.,* Marcia Stigum, *The Money Market* 577 (3d ed. 1990) (Although repurchase transactions are in form sequential sales and repurchases of securities, "everyone on the Street agrees that the *economic essence* of the transaction is that it is a *collateralized loan,* not a pair of securities trades.") (emphasis in original); *Repos are Loans, Not Gov't Securities for Purposes of '40 Act Safe Harbor Rule,* 20 Sec.Reg. & L.Rep (BNA) No. 49, at 1951 (Dec. 16, 1988) (for purposes of SEC rule, SEC takes position that "retail" repurchase agreements are regarded as "bank debt instruments"); Edward D. Kleinbard, *What's New With New Financial Products?, in Tax Strategies for Corporate Acquisitions, Dispositions, Financings, Joint Ventures, Reorganizations, and Restructurings* 1992 (PLI Tax Law & Estate Planning Course Handbook Series No. 334, 1992) ("Repos are hybrid transactions, and defining repos as securities sales, securities loan[s] or money loans is essentially a formalistic and arbitrary choice.").